Number 161507, number 161527, number 161596, number 161984, and number 171660, United States v. Victor Rodriguez-Torres et al. May it please the court and counsel and my colleagues, the jurors in this case were instructed that they did not need to find the existence of an actual enterprise. Only that one would exist or that defendant actually associated with the enterprise, only that he would. The evil contemplated by the RICO conspiracy statute is a shared common purpose that a crime be committed by a member of a conspiracy who is capable of committing it. But there is no evil if there is no existing enterprise and no actual association. And that is why binding precedent from this circuit and the U.S. Supreme Court have repeatedly instructed that the government must prove an enterprise that is in existence. So the government proceeded on a theory that there was an enterprise in existence and there were some acknowledgments by defense counsel that there was an enterprise in existence. And so in spite of that jury instruction, given what the government sought to prove at trial, I'm trying to figure out what difference it makes. Right, Your Honor, I have three points to make about prejudice in this case. The first is, certainly as Your Honor suggested, the government proved that La Rompe ONU existed and that it did so in a way that would fit the definition of a criminal enterprise. But that alone doesn't give rise to RICO conspiracy liability. There still, of course, is the requirement that the defendant associate with the enterprise and participate in its conduct. And on this point, the government's evidence as it relates to my specific client was almost exclusively based on the testimony of depraved cooperating witnesses. There was no evidence of incriminating cell phone calls or text messages or emails, no incriminating videos. Well, that's your sufficiency argument versus your jury instruction argument, which is what you started with and what I was trying to ask you about. Well, I don't make a sufficiency argument. And the reason is because the standard of review is different. We are not viewing the evidence in the light most favorable to the government. We're asking instead whether it's likely that the instruction impacted the outcome. Well, this was an unobjected to instruction. That's correct. So you're proceeding under plain error. That's correct. And so even if we were to find this as error, you've still got to persuade us that it made a difference. Yes. And here we have an instruction that misstated every element of the enterprise. And going back to the existing, there are cases that say for a RICO charge, you need an enterprise, of course. But for a conspiracy to enter into a RICO violation, why do you need, what case do you cite that says in that situation, the enterprise has to be any more real than, for example, the fake cocaine is in a conspiracy to distribute case? I would rely on Boyle, which reiterates everything that the court has said consistently in Salinas and in Turquette. And respectfully, I think that this is where the government's argument is wrong. What Salinas makes clear is that there is a significant difference between substantive RICO and RICO conspiracy insofar as the pattern of racketeering activity or what I call in my briefing the action element is concerned. In a substantive RICO case, the government does not need to prove that the defendant personally committed the two predicate acts. But what those cases make clear is that they, what the government, if I may finish my thought, what the government must prove, the whole point there is the defendant's participation in the association was enough. And of course, here the jurors were instructed that they did not need to find that the defendant actually participated in contravention of this court's case law and the U.S. Supreme Court's case law. Thank you. Thank you, Ted. This is Lothstein. Lothstein, thank you. Yes, my name is Ted Lothstein, and I represent Mr. Sanchez-Moore. May it please the court. So following up on the question about prejudice or what difference does it make for Mr. Sanchez-Moore specifically, I mean, if we are correct that the trial court's instruction misstated the law and was also hopelessly confusing to any juror or any person, the prejudice flows partly from the fact that Mr. Sanchez-Moore was also charged and convicted with conspiracy to distribute drugs. And there was evidence sufficient that he distributed or conspired to distribute drugs. And distribution of drugs was one of the core, it is the core racketeering predicate in the case. So this jury needed a good enough instruction, a coherent instruction for it to distinguish what's the difference between being a conspirator to distribute drugs in this case versus a conspirator for the overall RICO crime that the government alleges happened here. And it seems like the trial court's 21-page instruction, it seems to be geared for some kind of complicated and, excuse me, for some kind of wholly inchoate scenario where some criminal-minded individuals in a smoky room conspire to bring a hypothetical RICO enterprise into existence at some time in the future. And that was completely unnecessary to try to build such a complicated instruction to cover that scenario where here the government, as one of you said, takes the emphatic position that it did prove that an actual enterprise existed that actually affected interstate commerce. Well, wasn't the evidence, another word for enterprise is gang. Wasn't the evidence overwhelming here, put into one side whether your client was a participant or a conspirator? Wasn't the evidence overwhelming, almost uncontested, that there was a quite elaborate gang structure here? There was a gang structure here, yes. Don't we have our enterprise? And that's not really the issue in the case. We've got an enterprise. The question is what is the association, if any, between any of the defendants in that enterprise? Well, the instruction has to guide the jury with respect to Mr. Sanchez-Mora to understand what it needs in order to determine if the government proved that Mr. Sanchez-Mora knowingly and willfully conspired to further that RICO enterprise. And Mr. Sanchez-Mora was a person in this case that was relatively unusual. There was no evidence he ever possessed, used, or carried a firearm, which is the other core racketeering predicate in this case. No evidence he had any knowledge, involvement, or participation in any of the drive-by shootings or other homicides described by the cooperating witnesses and crime scene investigators in this case. There was no evidence that Mr. Sanchez-Mora followed organizational rules and practices, that he displayed a unique hand symbol, that he had special markings or brandings on drug packages that he sold, that he enforced rules against others. And the jury's attribution of drug weights to him were low. It's hard to understand how the attribution of drug weights by the jury to Mr. Sanchez-Mora could be consistent with him being not just a conspirator to distribute drugs, but a conspirator to join this RICO conspiracy the government says happened here. If there's enough evidence to find him a member of the conspiracy, is he responsible for the actions of the members of the conspiracy, whether he actually even knew about it? With respect to the drug conspiracy, yes. But the question is, did this instruction give the jury the guidance it needed to determine if he also is responsible for all the actions of the RICO conspirators? And, again, that is the prejudice in this case, is how is the jury supposed to tell from this 21-page indecipherable instruction whether Mr. Sanchez-Mora is not only guilty of conspiring to distribute drugs, conspiring to knowingly and willfully further the overall RICO conspiracy, which engaged in a lot of abhorrent practices, and Mr. Sanchez-Mora, there's no evidence he had anything to do with. My time is up. Thank you. Thank you. Mariano, good morning. Good morning, Your Honor. Raul Mariano Franco on behalf of Mr. Carlos Guerrero. May he please the Court. I will focus the attention of the Court briefly and the time I have on a different error, which is also under the plain error rule. In my brief, I argued that the government, the Court, I'm sorry, basically incorrectly informed the jury, instructed the jury, that firearms possession and firearms-related offenses are elements of predicates of the RICO conspiracy. That's simply error. The government has conceded error, so the Court should focus on prejudice and whether a constitutional error occurred here. The basic case which leads to the conclusion that error, irreversible error, occurred in this case is La Torre. La Torre is a 2017 case from this Honorable Court, which is very similar. The same judge, the same conspiracy, in fact. It's the same conspiracy in a prior case. It's the same type of instruction, with the Court given an almost identical error, which this Honorable Court in La Torre determined to be plain and to be constituted a constitutional error and that it caused prejudice. In Mr. Guerrero's case, the error made by the District Court is even worse. The Court amply discussed in La Torre, for example, whether the District Court had provided a remediative instruction after giving the incorrect assessment that firearms-related offenses are part of a RICO predicate. Here, not only that didn't happen, there was no instruction that could have remedied the error, but even worse, while in La Torre, the Court, in identifying the potential RICO predicates as an ample list, stated that, for example, murder, carjacking may be offenses. Here, it says, among others, implying that, in effect, other crimes may be potential RICO predicates, which they are. Could you address the government's argument on prejudice? Because I understand that we're basically in a situation here where we've got an instruction that's plain error, clear error, and so we're down to prejudice. And the government, as I understand it, is arguing that, well, they had such strong evidence of other acts that could have been predicate acts that this mistake we should just ignore. So it comes down to how overwhelming was the evidence that your client committed other predicate acts that the jury could have but did not rest on. The evidence against Mr. Guerrero was basically testimonial. There was no physical evidence, no video, no audio tape, no actual evidence occupied with regards to a RICO predicate. There was testimony by two cooperating defendants of murders, of a massacre, which the jury acquitted my client of, and some choking incidents, which is a very weak evidence, in fact, because there's no evidence, actual evidence, presented to the court. The choking evidence is the ones that he allegedly confessed to while he was in jail? Well, actually, there are two types of evidence. One is an alleged hearsay. Excuse me. Is that what you're referring to when you say that? The choking reference. There's no actual evidence, no, of the body of the person who was actually choked, not even the date, the name, nothing. It's simply a hearsay reference that my client said to another one that he had participated in some, this type of offense, and then afterwards, this other witness stated that my client admitted to him at MDC right now. But let me say this shortly as my time will be up. These two defendants are the sole witnesses of the massacre, which the jury acquitted. The court must understand, or I suggest it should understand, that the jury didn't provide any credibility to these two witnesses, particularly when one of them, which is Calvino Acevedo, was allegedly actually present in the massacre, pointed a finger at my client, stating that he participated in the massacre and a not guilty verdict issued. If you take out those two witnesses, the only other witness that testified and mentioned Mr. Guerrero is Mr. Delgado. Mr. Delgado solely said that Mr. Guerrero was a defendant that possessed a firearm and that sold drugs and that at some point in time grew up to be the owner of a drug point, a marijuana drug point. If the court looks at the actual verdict, it will see the low amount of drugs. It will look at my closing arguments. It will see how the defense rebutted or challenged the government's theory, and it's very similar, if not identical, to La Torre, and I ask and pray the court to find, as in La Torre, that reversible error occurred, in this case, as to the Rico conspiracy count. Were you at the trial? I was at the trial, counsel. In terms of how the trial developed, was the government arguing that the choking was another predicate act that the jury could rely on? They mix it up together. If you look at the closing argument in this case and throughout the case, you will see that the choking, in fact, Judge Fustes said one of the arguments to allow that coming in was that it would further my client's position in the Rico enterprise, that that is one of the reasons why he was allowing the choking incidents to come in without any other corroborating evidence, because it was pertinent, as it showed what the rompeón alleged was the necessary requirement to own a drug point, which was to kill someone, and there's no guilty verdict as to Mr. Guerrero, as to any murder in this case. Thank you. Thank you. Ms. Shevitz, good morning. Good morning. I'd like to reserve one minute for rebuttal. Out of four? Out of four. Okay. I represent Reynaldo Rodriguez-Martinez. As to him, there is insufficient evidence, and the jury verdict constituted a complete repudiation of the counts of the indictment of which he was convicted. The indictment charged as its basis that the conspiracy in count two was a conspiracy involving the quantity of drugs, 280 grams and more. In count one, the conspiracy, the underlying drug conspiracy also charged the same thing. I'm looking at the indictment, document three, at page 17 of 94, which charged the drug quantities for count one, and count two, also the indictment at page 50 of 94, charged those quantities. When the jury rendered its verdict, which is at my addendum, page seven, they didn't say, they convicted the defendant, and I suggest it's because of the instructions that allowed conviction, even if he thought about doing something. Even if he thought about some group being somebody else other than the killers that existed. Well, thinking about it, wasn't there evidence that he was a drug point owner? Well, the indictment charged that he was a drug point owner at Cardenas del Paraiso, and that also is in the pre-sentence report. On the government's brief, page 108, the government states that the probation officer got that wrong. The probation officer did not get that wrong. The indictment got that wrong. I'm talking about the evidence at trial. The evidence at trial was not that he was a drug point owner at that location as charged. One witness, Delgado, said that he actually was, he got it, he was mixed up, and he said, well, he worked on tables at this charge, at Cardenas del Paraiso, and he was a drug point owner, Delgado said, at Hatio, where his brother Miguelito was in the big honcho. And the judge said at that time that anybody could be a drug point owner. He said this at sentencing, if the higher-ups gave you authority to do something. I thought you were making a sufficiency. I am. It sounds like you're making a variance argument, that the indictment charged him with being a drug point owner at location A, but the evidence showed him to be a drug point owner at location B. No, I'm talking about the quality of the evidence, constituting insufficient credible evidence rising to the level of proof beyond a reasonable doubt. So you're saying there's no evidence that he was a drug point owner. There is no credible evidence that he was anything except a name to Delgado. I was under the impression that you were arguing a variance. No, I'm not really arguing a variance. I'm arguing insufficient evidence, and then I guess in my rebuttal, I will tell you why he was sentenced on the basis of quantities the jury said did not exist, because of the marijuana equivalency, which jacked it back up to the 841A, B1B. I'll save that for your one minute. I'll save it for my one minute. Thank you. Good morning. May I please see your court? My name is Liza River. I am counsel for Victor Rodriguez-Torres. As I have joined the other arguments as to the first issue, a FICO issue, I am going to argue the sentence of my client. And he has asked me to do that because he says, understands, argues, that there is no evidence as to him to have placed him in a drive-by shooting murder and as to being an owner of a huge drug point. Let me go to the drive-by shooting. The drive-by shooting, Your Honors, is done by a man, Mr. Pizarro, Janjore Pizarro. He was the one who was called and was told that he had to kill someone. He makes a team. My client is not part of that team. They meet. My client is not there. They get guns, weapons. My client is not there. It is the last day when they meet to go out that my client appears to be there to drive a car without a gun or weapons at all. Now, this is a second car. This is not the car where Pizarro is in. Pizarro is the one in charge of killing this other guy. And this guy goes ahead. Pizarro goes ahead. They start shooting, and eventually the second car arrives, which is said that my client was driving. He had no guns, allegedly. Why was he doing that? Well, Your Honor, as far as what was said was just driving a car. Well, Your Honor, but if you are going out to shoot and kill people, would you go without a gun? I never thought about that, actually. Why would someone, well, Your Honor, I'm sorry about that, but being reasonable, Your Honor, if you are involved in something that is a shooting that has been planned for days, would you go without being armed? It doesn't make any sense, Your Honor. Why isn't it a reasonable inference for the jury to draw that he had knowledge? I mean, you see, he had no weapon, but in other instances, we could have said a car in and of itself could be a weapon. Well, knowledge necessary would be knowledge that there would be a killing, a death, a shooting to kill someone specifically. According to the evidence in this case, my client is not placed at any time before planning getting guns, weapons, or anything with any of them. He is just brought in at the very last minute into a car without being armed to simply drive a car. Well, if I remember the record, and I may be getting the defendants mixed up, but if I remember the record, there was another fellow in the car who was on a phone taking orders from the group leader. That is the first car. It's not the car my client drove, Your Honor. That is the first car. Jan Joret is in that first car. He has a phone, and he is at all times talking to guy number one, the one who gave the order to have Joel Bazooka killed. There was someone else in your client's car, though. There were three more in the car. So the four of them just happened to be in a car out, and lo and behold, they found themselves at the spot of the shooting? No, Your Honor, no. Where did he think he was driving? The evidence is those other three had guns, weapons. The other three were armed. My client, Your Honor, appears nowhere except to drive a car. With three armed men who are following the car to do the shooting, if they miss, they get a backup. They were apparently not going to do the shooting. They were to guard the first car. Well, that's enough, isn't it? Well, Your Honor, I think it is not because for killing someone, murder, you need specific mens rea, not a general intent of participating. I'm sorry, Your Honor. Are we talking about conspiracy? I understand the term, Your Honor, yes. And you know the consequences of when you join a conspiracy, right? Definitely, Your Honor. And it seems that you're responsible for everything that the conspirators believe in, even though you don't know about it. Correct, Your Honor. And why are we in that situation? My client, Your Honor, has at all times proffered, okay, that he was not knowing of what was going to happen that night. And if we go to the trial record, what they say is that someone had to drive. And he was there. And because he was part of the group at some point, he was told, you drive. That was it. My time is up, Your Honors. Your time is up. Thank you. Mr. Strand, good morning. Good morning, Your Honors. Stratton Strand on behalf of the government. May it please the Court. If I could just go in sequence, as my opposing counsel did, beginning with Viglio Aponte's arguments consisting of questioning whether there was, in fact, prejudice concerning the existing enterprise element of the RICO conspiracy charge. We set out in our brief why we don't think the appellants have met their heavy burden of meeting any of the four prongs of plain error with respect to that instruction. But going to the heart of the matter, the prejudice question, my opponents have conceded that there was, in fact, an existing RICO enterprise here. They've done so today in court. They did so in their briefs. It was uncontested below, and the evidence was overwhelming. This was a full-fledged enterprise. It was charged that way and proven. So there was no prejudice. The suggestion that, as to Mr. Viglio Aponte, that there was not enough evidence that he was associated with that RICO enterprise is also incorrect. He was the second-in-command of the enterprise. He was an owner of multiple drug points. He was an armed enforcer. He participated in numerous murders, including the Los Paseos murder for which he was convicted. As to Sanchez Mora, the question there, again, is, how was my client associated with the RICO enterprise? The court gave separate instructions for the drug conspiracy and the RICO conspiracy, made absolutely clear that those were separate questions, in fact, gave a multiple conspiracies instruction. So the jury was clearly instructed that it had to make separate findings. As to Guerrero Castro's arguments, he focuses primarily on La Torre Cacho and the firearm predicate issue. This case is not another hen's tooth. In this case, unlike in La Torre Cacho, we have made very strong, explicit, third- and fourth-prong arguments, and those arguments are no prejudice, no possible prejudice, because the government argued and proved two specific predicates that are valid predicates, drug trafficking and murder. It only asked the jury to find those. And the evidence there, again, was overwhelming that the enterprise conducted its business through drug trafficking and murder, and the jury's findings, guilt here, showed that had they been properly instructed, they would have found those predicates. They found guilt. Yes, Your Honor. Well, that's where you're losing it. We're talking about, for example, take Guerrero Castro. He was charged with and convicted of the RICO conspiracy, drug conspiracy, count three, using and carrying a firearm in relation to count two, but then he also charged him with murder arising out of a so-called massacre, and the jury acquitted him on that. And then the judge gave the jury a wrong instruction, saying they could use the firearm charge as a predicate offense, which they couldn't. The question here is, in terms of the RICO conspiracy instruction, what the defendant has to have done is knowingly associated himself. I'm trying to get you to focus on a slightly different point, perhaps, which is the wrong instruction on the firearm. I understand Your Honor's question, and I guess I'm getting at it at a roundabout rate. You agree that was error? Absolutely. We agree, and we agree that it was plain. And so how was there no prejudice from that, given that the only other predicate act that you charged him of, he was acquitted on, and so you're left with pointing to some other act that perhaps you could have charged him on, but you didn't? The point that I'm trying to make, Your Honor, is that under RICO conspiracy, there does not have to be proof that the defendant himself committed one of the predicate acts. He does not even have to, under Salinas, he does not even have to have agreed to be the one to commit one of the predicate acts. That would be true of the massacre? Correct. And the jury acquitted him? No, no. I'm sorry. He was acquitted of a separate murder. He was acquitted of the Jardin de Coupe massacre. Wasn't that Enterprise involved? Yes, Your Honor. But the Los Paseos murder was committed by Vigilio Aponte and Rodriguez Torres, and it was committed specifically in furtherance of the RICO Enterprise. I think what you're saying is you could have just charged him with the RICO conspiracy. The judge could have said no need to find any other predicate acts, but if it turned out you proved that the RICO Enterprise engaged in acts that were predicate acts, then you would link him to that by the conspiracy and say no prejudice. That's exactly what we're saying, Your Honor. That seems quite a stretch. The question is whether he knowingly joined the conspiracy, and there's no dispute that he knowingly joined this RICO conspiracy. So the question is would a properly instructed jury have found that this organization, not Mr. Guerrero Castro, but this organization conducted its affairs through drug trafficking and murder? And we're saying the evidence is overwhelming and undisputed that this organization conducted its affairs in that manner and that he knowingly joined that conspiracy. He does not have to have agreed to personally commit murder or drug trafficking. He does not have to have done those things himself. All that is required is that he knowingly joined a conspiracy that conducted its affairs in that manner. And that, in there, the evidence was overwhelming. But he'd need to be a member at the time of these particular acts as opposed to if he'd withdrawn from the conspiracy. And there's no claim here that he was not a member at the time of all of these acts. The murders here were the mode of business of this organization. Murders, as testified to by the cooperators, comprised a large part of what they did throughout the time that Mr. Guerrero Castro was part of this organization. He was, in fact, an armed enforcer in this organization. So and protecting, of course, as a drug point owner, a multiple drug point owner, he relied on the violence of that crew, of his crew, to protect those drug points. In fact, that was how they got some of the drug points was by murdering people and taking over the housing project. So murder was an essential mode of business of this enterprise that he knowingly joined. In Ramirez-Rivera, in discussing the predicate acts, we said the issue is whether the defendant agreed to commit or, in fact, did commit two or more predicate offenses. That statement is incorrect in light of Salinas. Salinas, that was a specific holding of Salinas, was that a defendant does not need to have agreed to personally commit any of the predicate acts. All that is required, it suffices, as Salinas said, it suffices that he agree to further an activity which, if completed, would satisfy all the substantive elements. He does not have to, Deputy Sheriff Salinas, did not have to agree to accept any bribes. There was no evidence that he accepted any bribes. Yet he was found, it was found sufficient that he facilitated the conspiracy that did accept bribes. The exact same thing is the situation here. This person facilitated the acts of a conspiracy that operated through drug trafficking and murder, and drug trafficking and murder, the evidence of that was overwhelming. He knew of that and he supported it and furthered it. As to Rodriguez-Martinez, the arguments of insufficiency, the suggestion seems to be that because the indictment charged certain statutory drug levels and the actual verdict came in with lower amounts, that somehow the jury did not find Mr. Rodriguez-Martinez guilty of the drug conspiracy. That's incorrect. A drug conspiracy is, you can find guilt based on participation in any amount of controlled substances. The higher amounts go to higher statutory minimums. And, of course, the jury has to make a finding to expose a defendant to a higher statutory minimum. But the requirement for guilt is participation in any amount of drugs. And that's what the jury found here. So the suggestion that because it didn't find higher amounts, he wasn't actually guilty of drug conspiracy is incorrect. And the other primary argument is that the evidence wasn't credible, but in an insufficiency context, this court doesn't ask credibility questions. Before you go further, I am probably erroneous, but I'm under the impression that one of the defendants, I thought it was this defendant, was arguing variance of some sort. Am I incorrect? Yes. Counsel has, I think, disavowed... Those limited to this defendant. Maybe it's not this defendant. There's so many different... I don't know who's up first in this case. Yes, Your Honor. No, a variance argument has not been made, nor would there be a basis for a variance argument. What was charged was participation in a RICO conspiracy through drug trafficking. And whether it was a drug point at one housing project or another, that's not an element of the crime. Is that the right question? Yes, Your Honor. Finally, as to Rodriguez-Torres, whether there was sufficient evidence of premeditation, because Mr. Rodriguez-Torres drove the car that had three other men armed with automatic weapons and chased and followed over a course of hours the target of their mission of killing, as the district court found, seems to me hardly worth mentioning. The fact, I will point out a couple incorrect assertions. The second car, which Mr. Rodriguez-Torres was driving, actually did commit murders in that event. They were the car that shot up the escort car. They killed the two men in the escort car. And, Judge Chiara, your question about the gentleman in the car with Mr. Rodriguez-Torres, Scary was on the radio with the first car, and Scary was giving them instructions to go ahead and start the shooting. And Mr. Rodriguez-Torres was in the car with Scary when Scary was giving that instruction. So, obviously, Mr. Rodriguez-Torres knew what was going down. And his purpose in being there was to advance those murders. If there are no further questions, we would ask that you affirm the convictions. Thank you. Ms. Lewis? The pre-sentence report in this case charged that there was a mandatory minimum. It got to that point because it aggregated drugs that the jury did not find, that co-conspirators may have committed, but the jury found that my guy, Rodriguez-Martinez, did not commit it, and aggregated them to make a marijuana equivalency. Therefore saying that there was 100 kilograms of marijuana, which the jury said absolutely not. That bumped it up to a mandatory minimum. At sentencing, the trial prosecutor told the court that there was no mandatory minimum, but the trial court did not change its view and proceeded with the sentence, and there is no indication that there was a proper sentencing based on proper amounts. The trial, the lawyer didn't just agree with everything that the judge said or the prosecutor said, and there was no adversary challenge. If I could just say, Judge Torbellia, you asked whether it's true that the co-conspirator should be liable for all amounts. And in this case, no. Even if he's convicted, because you only need a little bit, the special verdict says that the conspiracy involved less than those amounts. That is an acquittal, and this implicates the decisions on sentencing for acquittals besides mandatory minima, and I've discussed some of those in my brief. Justice Kavanaugh is of the opinion that you shouldn't sentence people on what they are acquitted of, and I ask the court to review this defendant differently, uniquely, from the other defendants in this case. Thank you.